FAIR, J.,
for the Court:
111. Police discovered more than sixty grams of cocaine and $13,000 in cash in the home Christopher Jordan shared with his girlfriend and her children and grandchildren. The drugs were in common areas, but the money was more clearly connected to Jordan. The jury rejected Jordan’s defense that the drugs were not his. On appeal he contends the trial court erred in refusing him a circumstantial evidence jury instruction. We find no error and affirm.
FACTS
¶ 2. Following a controlled drug buy by a confidential informant,[1] the Harrison County Sheriffs Department secured a search warrant for a home in Pass Christian. Inside, they found more than sixty grams of powder cocaine hidden inside a coffee maker. On the front porch, inside a Christmas decoration, they found an additional 2.9 grams of cocaine base, commonly known as crack cocaine. According to the State’s witnesses, this is a large quantity of cocaine, consistent with distribution and not personal use.
¶ 3. When deputies entered, Jordan and his girlfriend were seated in the kitchen, a short distance from the coffee maker. Inside Jordan’s wallet, found on his person, they discovered $4,000 in bills, packaged in increments of $1,000 wrapped in small rubber bands. In the master bedroom, they *350 found a binder containing another $9,000, also in $1,000 increments wrapped in small rubber bands, and a traffic ticket in Jordan’s name. Investigators also found a man’s clothing on the floor and in the closet. Jordan admitted to one of the investigators that he resided at the house, though his driver’s license bore a different address. Finally, investigators found a small amount of crack cocaine in a matchbox in the bedroom of one of the adult children.[2] .
¶ 4. Jordan was prosecuted under a constructive-possession theory that tied his occupancy of the house to his more direct possession of a large amount of unexplained cash. The prosecution was also allowed to present evidence of Jordan’s two prior drug offenses as evidence of his intent to distribute. Jordan was convicted and sentenced to sixty years as a habitual offender, to be served without the possibility of parole or probation.
DISCUSSION
¶ 5. Jordan’s single argument on appeal is that the trial court erred in refusing his circumstantial evidence instructions. Instruction D-8 would have provided:
The Court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the defendant, then the evidence for the State must be so strong as to establish the guilt of the defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.
D-9 was the familiar “two-theory instruction,” which would have instructed the jury “what to do when the record supports two or more hypotheses of the crime committed and all the evidence of the crime is circumstantial.” McInnis v. State, 61 So.3d 872, 875 (¶ 11) (Miss.2011) (citation and internal quotation marks omitted).
¶ 6. One (but not necessarily both) of these instructions must be given, when requested by the defendant, only if the case against him is “purely” or “wholly” circumstantial, as opposed to direct. Goff v. State, 14 So.3d 625, 662-63 (¶ 162) (Miss.2009). This statement of the law is often repeated in one form or another, but it may be misleading; direct evidence in this context must amount to “an admission or confession by the defendant to a significant element of the offense, or eyewitness testimony to the gravamen of the offense charged.” States v. State, 88 So.3d 749, 756 (¶ 27) (Miss.2012). “The term gravamen is defined as the substantial point or essence of a claim, grievance, or complaint.” McInnis v. State, 61 So.3d 872, 875 (¶ 11) (Miss.2011) (citation and internal quotation marks omitted).
¶7. Since the drugs were not found on his person, Jordan was prosecuted under a constructive-possession theory. Constructive possession exists where the contraband was “subject to [the defendant’s] dominion or control.” Curry v. State, 249 So.2d 414, 416 (Miss.1971). It “may be established where the evidence, considered under the totality of the circumstances, shows that the defendant knowingly exercised control over the con *351 traband.” Knight v. State, 72 So.3d 1056, 1063 (¶ 26) (Miss.2011).
¶ 8. The question of constructive possession is whether the defendant exercised dominion and control over the contraband. When the defendant owns or controls the premises where the contraband is found, there is a presumption of constructive possession of the contraband. Ferrell v. State, 649 So.2d 831, 834 (Miss.1995). But if the defendant’s possession of the premises is not exclusive, there must be additional incriminating circumstances tying him to the drugs. Fultz v. State, 573 So.2d 689, 690 (Miss.1990). While it is evidence of constructive possession, “mere physical proximity to the contraband does not, in itself, show constructive possession.” Ferrell, 649 So.2d at 834.
¶ 9. On appeal, Jordan argues that there was no direct evidence and that he was entitled to a circumstantial evidence instruction. Jordan’s attorney on appeal makes several factual claims that are not supported in the record. He contends that the house was owned by Jordan’s girlfriend, but he provides no citation to the record in support. This Court is not obligated to scour the record to find support for assertions of fact in briefs, Jefferson v. State, 138 So.3d 263, 265 (¶9) (Miss.Ct. App.2014), but there does not appear to have been any evidence of who owned the house.[3] Jordan also claims that the proof showed that he was merely present in the home at the time the search warrant was executed. That is simply not the case— the investigator testified that Jordan had admitted he lived there.
¶ 10. Since Jordan did not live in the house alone, “additional incriminating circumstances” were required to prove constructive possession of the drugs. Fultz, 573 So.2d at 690. These were Jordan’s admitted occupancy of the house, the recent drug sale at the house, his place among the occupants (he and his girlfriend were the senior residents and apparently shared the “master” bedroom), Jordan’s proximity to the drugs when they were found, and his unexplained possession of large amounts of cash.
¶ 11. Many of these facts were established by direct evidence to some degree— for example, Jordan admitted he lived in the house, and he was seen by investigators in the kitchen when the search warrant was executed. However, the issue before us is whether the gravamen of the offense was established by direct evidence. McInnis, 61 So.3d at 875 (¶ 11). Constructive possession is a totality of the circumstances analysis, so identifying the “gravamen” can be difficult. See Knight, 72 So.3d at 1063 (¶ 26). Indeed, it has been said that “proof of constructive possession is by its very nature circumstantial.” Burnham v. State, 467 So.2d 946, 947 (Miss.1985). And yet in nearly every reported decision we have reviewed, the refusal of a circumstantial evidence instruction was affirmed. The Mississippi Supreme Court explained why in Keys v. State, 478 So.2d 266, 268 (Miss.1985):
[A] linguistic problem confronts us. What is “circumstantial evidence”? The least inadequate definition we can provide is that circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist. Conversely, eyewitness testimony is thought of as direct evidence. The problem is that evidence in criminal cases does not fit into two nice, neat, *352 mutually exclusive categories: direct and circumstantial. There are too many shades of gray. Most trials are full of evidence from one end of the spectrum to the other.
In one sense practically all evidence is circumstantial evidence. If A sees X shoot Y, the likelihood is that A’s eyes do not actually see and transmit to A’s brain a sight impression of the bullet speeding toward Y. When A testifies he is inferring that X shot Y from the fact that he saw X pull the trigger, “heard” the shot and a split second later he saw Y fall. The State’s ease there is in reality based on circumstantial evidence, but we would be thought silly to so hold.
[[Image here]]
Here there is no proof ... that Albert Keys was physically holding the marijuana and in this sense it cannot be denied that inference is necessary to move from the evidence that Keys occupied and inhabited the apartment and had dominion and control over it, coupled with the presence of the five grocery bags of marijuana in the bathroom, to the conclusory fact that Keys possessed the marijuana. The inference is a short one, one which in an analogous context of years gone by did not hinder this Court’s holding that, when intoxicating liquor was found on search of a residence of an accused who was the head of a family residing in the home, a prima facie case of possession by him had been made. Peeples v. State, 216 Miss. 790, 798, 63 So.2d 286 (1953); Williamson v. State, 191 Miss. 643, 646, 4 So.2d 220, 221 (1941).
Today’s riddle is resolved by getting well in mind what it is that the State is expected to prove — and then asking whether, this has been established by direct or circumstántial evidence. Here the State is not required to prove actual physical possession. The positive law of this state declares it unlawful for one to have constructive possession of an illegal controlled substance with intent to sell. Martin v. State, 413 So.2d 730, 732 (Miss.1982); Curry v. State, 249 So.2d 414, 416 (Miss.1971). An item is within one’s constructive possession when it is subject to his dominion or control. Constructive possession may be established by direct evidence or circumstantial evidence.
Here we have substantial direct evidence that the marijuana was within Keys’ constructive possession. Without dispute the apartment was subject to Keys’ dominion and control. He lived there alone. The grocery bags of marijuana were seen in the bathroom of Keys’ apartment. This is direct eyewitness evidence of the gravamen of the offense — Keys’ constructive possession of the marijuana. The trial judge, accordingly, was not required to give the circumstantial evidence instruction.
Thus, the supreme court has held that control of the place where drugs are found is enough to amount to direct evidence of constructive possession.
¶ 12. Jordan tries to distinguish his case from Keys by the fact that he did not have exclusive possession and control of the house; his girlfriend, two of her children, and at least two small grandchildren lived there as well.[4] We note that, even though the supreme court observed that Keys’s occupation of the house was exclusive, it pronounced that dominion and control of the premises, not exclusive domin *353 ion and control, is sufficient to establish the gravamen of the offense by direct evidence. Id. at 268.
¶ 13. This Court addressed Jordan’s argument directly in Jenkins v. State, 757 So.2d 1005, 1009 (¶¶ 19-21) (Miss.Ct.App.1999). Jenkins claimed he was entitled to a circumstantial evidence instruction because he was not the only person living at his residence; he had a “live-in girlfriend” who was also present when the drugs were found. Id. at 1006-07 (¶¶2, 9). We rejected the argument, holding that “the issue of whéther Jenkins had exclusive dominion and control is a separate question from whether this is a circumstantial evidence case.” Id. at 1009 (¶ 20). This was notwithstanding the fact that nonexclusive possession of the premises is insufficient proof without additional incriminating circumstances. Id.
¶ 14. Jordan contends that Jenkins is inapposite because, although we never said so explicitly, our holding seemed to be premised on the assumption that Jenkins was the “owner” of the house and thus presumed by law to be in constructive possession of its contents — at least before the presumption would be rebutted by proof he did not occupy it exclusively. See Ferrell v. State, 649 So.2d 831, 834 (Miss.1995). Jordan contends, correctly, that there was no proof he was the owner of the house. It is also true that the usual statement of the rule refers to the “owner” of the premises. See, e.g., Pool v. State, 483 So.2d 331, 336 (Miss.1986). However, the presumption is actually broader; the supreme court has held that “[t]he correct rule in this jurisdiction is that one in possession of premises upon which contraband is found is presumed to be in constructive possession of the articles.... ” Powell v. State, 355 So.2d 1378, 1379 (Miss.1978). This statement of the rule has been repeated by the supreme court as recently as 2009. Roach v. State, 7 So.3d 911, 927 (¶ 38) (Miss.2009) (citing Powell, 355 So.2d at 1378). We can see no reason why strict ownership of the premises should be the test, since possession is what is at issue. Why should the owner of an apartment be presumed to be in possession of contraband found inside, and not the tenant who lives there? Jordan does not say.
¶ 15. Jordan has not cited any authorities holding that a circumstantial evidence instruction was wrongly refused when the defendant was in mere possession, even nonexclusive, of the premises where contraband was found. Nor did we encounter any in our survey of other reported Mississippi decisions. In Glidden v. State, 74 So.3d 353, 356 (¶ 7) (Miss.Ct.App.2010), this Court affirmed the refusal of a circumstantial evidence instruction where the evidence showed that the defendant had been in possession of a borrowed vehicle containing drugs for only thirty minutes. On certiorari, the supreme court affirmed, with the plurality adopting our rationale for denying the instruction and the dissent letting it pass without comment. See Glidden v. State, 74 So.3d 342, 344 (¶ 10) (Miss.2011). In Boches v. State, 506 So.2d 254, 260 (Miss.1987), the supreme court reached the same result where the defendant had been in possession of the vehicle for fifteen hours. In Ginn v. State, 860 So.2d 675, 679-80 (¶¶ 3-9) (Miss.2003), Ginn was a passenger in a vehicle where precursors were found, but the circumstantial evidence instruction was again properly refused. In Petti v. State, 666 So.2d 754, 756-57 (Miss.1995), a circumstantial evidence instruction was refused where the defendant had rented a hotel room that was occupied by at least one other person.
¶ 16. After reviewing the record and the controlling law, we conclude that the *354 trial court did not err in refusing Jordan’s circumstantial evidence instructions.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY OF CONVICTION OF POSSESSION OF A CONTROLLED SUBSTANCE WITH INTENT TO DISTRIBUTE AND SENTENCE AS A HABITUAL OFFENDER OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Facing charges of his own, the informant fled the jurisdiction and did not testify at trial. The trial court also did not allow the investigator to testify that he recognized Jordan’s voice in the recording of the drug buy. Thus the prosecution was not able to introduce evidence of who had sold the drugs.

. Jordan claims in his brief on appeal that his girlfriend’s son "admitted it was his cocaine.” His citation to the record in support does not bear that out. Instead, the evidence at trial was a hearsay statement from an investigator (on cross-examination by the defense) that the son had admitted he put it in his dresser. In a motion hearing outside the presence of the jury, the investigator testified that the son had said he found the cocaine in the house and had hidden it away, believing it belonged to Jordan.

. Jordan’s attorney at trial did repeatedly claim that the girlfriend owned the house, but assertions of counsel are not evidence. Hawkins v. State, 90 So.3d 116, 121 (¶ 15) (Miss.Ct.App.2012).

. There is some confusion about the number of children and grandchildren residing in the house; it was either four or six.